ACCEPTED
04-14-00827-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/12/2015 5:25:46 PM
KEITH HOTTLE
CLERK

# NO. 04-14-00827-CV

_____

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/12/2015 5:25:46 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

_____

**PT INTERMEDIATE HOLDING, INC. AND
PERSONAL TOUCH HOLDING CORP.,
Appellants,
v.
LMS CONSULTING LLC,
Appellee.**

_____

On Appeal from the 45th Judicial District Court of Bexar County, Texas
(Honorable Peter Sakai, of the 225th Judicial District Court, Presiding)
Trial Court Cause No. 2014-CI-00450

_____

## APPELLANTS' BRIEF

_____

Monte F. James
State Bar No. 10547520
mjames@jw.com
Kimberly A. Gdula
State Bar No. 24052209
kgdula@jw.com
**JACKSON WALKER L.L.P.**
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

**COUNSEL FOR APPELLANTS**

# IDENTITY OF PARTIES AND COUNSEL

1. <u>Appellants</u>

   **PT Intermediate Holding, Inc. and Personal Touch Holding Corp.**

   *Represented by:*

   Monte F. James
   State Bar No. 10547520
   mjames@jw.com
   Kimberly A. Gdula
   State Bar No. 24052209
   kgdula@jw.com
   JACKSON WALKER L.L.P.
   100 Congress Avenue, Suite 1100
   Austin, Texas  78701
   Telephone:  (512) 236-2000
   Facsimile:  (512) 236-2002

2. <u>Appellee</u>

   **LMS Consulting LLC**

   *Represented by:*

   Alejandro Mora
   State Bar No. 24051076
   alejandro@morahealthcarelaw.com
   LAW OFFICES OF ALEJANDRO MORA, PLLC
   7000 North MoPac Expressway
   Suite 200
   Austin, Texas 78731
   Telephone:  (512) 514-6683
   Facsimile:  (888) 320-0589

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .......................................................i

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF CASE ......................................................................1

STATEMENT OF JURISDICTION..............................................................2

STATEMENT REGARDING ORAL ARGUMENT .....................................................3

ISSUES PRESENTED.......................................................................4

**ISSUE 1.** Did the trial court err in denying PT Intermediate Holding Inc.'s Special Appearance when PT Intermediate Holding, Inc. does not have minimum contacts with Texas sufficient to subject it to personal jurisdiction in Texas?........................................4

**ISSUE 2.** Did the trial court err in denying Personal Touch Holding Corp.'s Special Appearance when Personal Touch Holding Corp. does not have minimum contacts with Texas sufficient to subject it to personal jurisdiction in Texas?........................................4

PRELIMINARY STATEMENT .................................................................5

STATEMENT OF THE FACTS ................................................................6

SUMMARY OF THE ARGUMENT ..............................................................9

ARGUMENT AND AUTHORITIES .............................................................10

    I.    STANDARD OF REVIEW AND APPLICABLE LAW .....................................10

    II.    LMS CONSULTING FAILED TO ESTABLISH SPECIFIC JURISDICTION OVER APPELLANTS………………….............................13

        A.    Appellants do not control the internal operations of the Texas Entities.........................................................13

        B.    Even assuming *arguendo* that Appellants maintain internal control over the Texas Entities, the alleged level of control is insufficient to establish personal jurisdiction. ...............................................15

III. LMS CONSULTING FAILED TO ESTABLISH GENERAL JURISDICTION OVER APPELLANTS. ...........................................22

    A.    General jurisdiction requires continues and systematic contacts with the forum state. ................................................22

    B.    There is no basis for the exercise of general jurisdiction over Appellants in this case. .....................................................24

    C.    Appellant Personal Touch Holding Corp.'s Texas Taxpayer Number does not subject it to personal jurisdiction in Texas.................................................................25

IV. THE EXERCISE OF PERSONAL JURISDICTION OVER APPELLANTS WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE..............................................................27

CONCLUSION AND PRAYER ..........................................................28

RULE 9.4 CERTIFICATE OF COMPLIANCE ......................................30

CERTIFICATE OF SERVICE ...............................................................31

APPENDIX ........................................................................................32

iii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*BMC Software of Belg., N.V. v. Marchand*,
 83 S.W.3d 789 (Tex. 2002)...........................................................................*passim*

*Conner v. Conticarriers & Terminals, Inc.*,
 944 S.W.2d 405 (Tex. App.—Houston [14th Dist.] 1997, no writ).......10, 16, 17

*CSR, Ltd. v. Link,*
 925 S.W.2d 591 (Tex. 1996) ....................................................................22

*De Elizondo v. Elizondo*,
 No. 04-08-00384-CV, 2009 Tex. App. LEXIS 4101 (Tex. App.—San
 Antonio Jun. 10, 2009, no pet.) ...............................................................26

*Equitable Prod. Co. v. Canales-Trevino*,
 136 S.W.3d 235 (Tex. App.—San Antonio 2004, pet. denied)........................12

*Gentry v. Credit Plan Corp. of Houston*,
 528 S.W.2d 571 (Tex. 1975) ..............................................................17, 20

*Grand Aerie Fraternal Order of Eagles v. Haygood*,
 402 S.W.3d 766, 774 (Tex. App.—Eastland 2013, no pet.)..............................26

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
 815 S.W.2d 223 (Tex. 1991) ...................................................................12

*Guarino v. 11327 Reeder Rd., Inc.*,
 No. 05-12-01573-CV, 2013 Tex. App. LEXIS 10497 (Tex. App.—Dallas
 Aug. 20, 2013, no pet.) (mem. op.)..................................................................21

*Hargrave v. Fibreboard Corp.*,
 710 F.2d 1154 (5th Cir. 1983) ...............................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984)................................................................................23

*Lewis v. Indian Springs Land Corp.*,
 175 S.W.3d 906 (Tex. App.—Dallas 2005, no pet.) ....................................12, 13

*Michiana Easy Livin' Country, Inc. v. Holten*,
  168 S.W.3d 777 (Tex. 2005) ...............................................................................10

*Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*,
  167 S.W.3d 432 (Tex. App.—San Antonio 2005, no pet.) ................................11

*Petrie v. Widby*,
  194 S.W.3d 168 (Tex. App.—Dallas 2006, no pet.) ....................................10, 11

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*,
  235 S.W.3d 163 (Tex. 2007) .......................................................................*passim*

*Retamco Operating, Inc. v. Republic Drilling Co.,*
  278 S.W.3d 333 (Tex. 2009) ...............................................................11, 15, 28

*Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*,
  362 S.W.3d 649 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).............19

*S. Stucco, Inc. v. GC Multifamily-New Orleans, L.P.*,
  205 S.W.3d 570 (Tex. App.—Dallas 2006, no pet.) .........................................12

*Spir Star AG v. Kimich*,
  310 S.W.3d 868 (Tex. 2010) ..............................................................................22

*Submersible Sys., Inv. v. Perforadora Cent., S.A. de C.V.*,
  249 F.3d 413 (5th Cir. 2001) ...............................................................22, 23, 24

*Transportes Aereos de Coahuila, S.A. v. Falcon*,
  5 S.W.3d 712 (Tex. App.—San Antonio 1999, pet. denied)............................27

STATUTES

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) ......................................................2

RULES

TEX. R. CIV. P. 120a.........................................................................................6, 15

OTHER AUTHORITIES

6 MOORE'S FEDERAL PRACTICE § 108.41[3].........................................................22

4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 .................22, 23

# STATEMENT OF CASE

*Nature of Underlying Proceeding:*  This case involves claims of breach of contract and tortious interference with existing contracts arising from certain staffing and recruiting agreements allegedly entered into by parties other than Appellants.  Appellee LMS Consulting LLC added Appellants as defendants under a theory of vicarious liability.  Appellants do not, however, have minimum contacts with Texas sufficient for the trial court to exercise personal jurisdiction over Appellants in this matter.  Appellants filed special appearances, which the trial court denied.  That denial forms the basis of this appeal.

*Parties in the Trial Court:*  *Plaintiff*: LMS Consulting LLC

*Defendants*:  PT Intermediate Holding, Inc. and Personal Touch Holding Corp. (collectively "Appellants"), and PT Home Services of Dallas, Inc. and PT Home Services of San Antonio, Inc.[1]

*Course of Proceedings:*  Appellee filed suit on January 13, 2014.  C.R. 1. Appellant PT Intermediate Holding Inc. was added as a defendant on May 16, 2014, and filed its special appearance on June 5, 2014.  C.R 68–69, 80. Appellant Personal Touch Holding Corp. was added as a defendant on August 13, 2014, and filed its special appearance on October 6, 2014.  C.R. 269–71, 294.

*Trial Court:*  Hon. Peter Sakai, 225th District Court, Bexar County

*Trial Court Disposition:*  The trial court denied Appellants' special appearances following a hearing on October 28, 2014.  R.R. 74.  The trial court entered orders denying the special appearances on November 7, 2014.  C.R. 339–42.

---

[1]  Personal-Touch Home Care of N.Y., Inc. was named as a defendant when this lawsuit was initially filed, and its special appearance sustained on November 7, 2014.

1

## STATEMENT OF JURISDICTION

The Court has jurisdiction of this appeal pursuant to Section 51.014(a)(7) of the Texas Civil Practice and Remedies Code.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe oral argument may assist the Court in making a determination on the jurisdictional issues presented herein.

## ISSUES PRESENTED

**ISSUE 1.** Did the trial court err in denying PT Intermediate Holding Inc.'s Special Appearance when PT Intermediate Holding, Inc. does not have minimum contacts with Texas sufficient to subject it to personal jurisdiction in Texas?

**ISSUE 2.** Did the trial court err in denying Personal Touch Holding Corp.'s Special Appearance when Personal Touch Holding Corp. does not have minimum contacts with Texas sufficient to subject it to personal jurisdiction in Texas?

# PRELIMINARY STATEMENT

The limits of personal jurisdiction are well defined. When a nonresident defendant lacks minimum contacts with the forum state, dismissal for lack of personal jurisdiction is required. In this case, Appellants lack any relevant contacts with the State of Texas. They are foreign entities based in New York that do not conduct any business in Texas. Appellants are merely the parent companies of two subsidiary companies that conduct business in Texas.

Recognzing that Appellants lack minimum contacts with this state, LMS Consulting seeks to impute to Appellants the contacts of its two subsidiary companies in Texas for jurdicational purposes. While courts have recognized a limited veil-pericing theory for jurisdictional purposes, they have imposed a heavy burden on the party seeking to establish personal jurisdiction under that doctrine. Here, LMS Consulting has failed in whole to carry its burden. LMS Consulting cannot overcome the fact that Appellants have no minimum contacts with Texas and they do not exercise the requiste level of control over their subsidiary companies to impute their contacts for jurisdictional purposes. The exercise of personal jurisdiction over Appellants in this case would undoubtedly violate fair play and substantial justice. As such, the trial court erred when it denied Appellants' special appearances.

## STATEMENT OF THE FACTS

This is a breach-of-contract and tortious interference case arising from certain staffing and recruiting agreements. Appellee LMS Consulting, Inc. ("LMS Consulting"), the plaintiff in the case, provides recruiting and staffing services. LMS Consulting locates, recruits, and engages healthcare workers for employment with certain healthcare companies. In return, the healthcare companies pay LMS Consulting certain fees for its recruiting services. Appellants, the defendants in the litigation, are the parent companies of two home healthcare companies, PT Home Services of Dallas, Inc. and PT Home Services of San Antonio, Inc. (collectively the "Texas Entities")[2], among other companies.

LMS Consulting asserts that it entered into various recruiting agreements with the Texas Entities to recruit healthcare workers for their locations in Dallas, San Antonio, Welsaco, and El Paso. C.R. 274–78. Appellants, as the parent companies of the Texas Entities, are *not* parties to any of the agreements at issue. C.R. 294–95.

---

[2] The Texas Entities did not file Rule 120a Special Appearances and are before the trial court in this case for all purposes.

The corporate structure of the Personal Touch-affiliated companies at issue here is as follows:



Despite the lack of any contacts with Texas sufficient to support the exercise personal jurisdiction, LMS Consulting sued Appellants in Texas, under a theory of vicarious liability, for damages LMS Consulting purportedly incurred when the Texas Entities allegedly breached the recruiting agreements. C.R. 278–79. LMS Consulting also sued Appellants, under a theory of vicarious liability, for damages LMS Consulting allegedly incurred when the Texas Entitles' tortiously interfered with LMS Consulting's contractors. *Id.* While Appellants adamantly dispute these claims, this appeal is unrelated to the merits, or lack thereof, of LMS Consulting's claims. Instead, this appeal only concerns whether the trial court properly exercised personal jurisdiction over Appellants.

LMS Consulting alleges personal jurisdiction under a veil-piercing theory by which the contacts of the Texas Entities are imputed to Appellants. LMS Consulting did not (and cannot) carry its heavy burden under that theory to support the exercise of personal jurisdiction. The following undisputed facts are dispositive on the personal jurisdiction issue:

- Appellant Personal Touch Holding Corp. is a foreign corporation organized and existing under the laws of the State of Delaware. C.R. 296.

- Appellant PT Intermediate Holding, Inc. is a foreign corporation organized and existing under the laws of the State of New York. *Id.* 82.

- Appellants both maintain their principal office in Bayside, New York. *Id.* 82, 296.

- **Appellants do not operate or do business in Texas**. *Id*

- Appellants did *not* contract with LMS Consulting or commit any of the acts about which LMS Consulting complains. *Id.* 269, 274–79. Instead, to the extent any valid contracts with LMS Consulting exist, they were entered into between LMS Consulting and the Texas Entities, companies separately formed and owned by Appellants. *Id.* 274–76.

- Appellants do not control the internal operations of the Texas Entities. *Id.* 85–86, 299–300.

- Appellants do not have offices or mailing addresses in Texas. *Id.* 82, 94, 296, 323.

- Appellants do not have a certificate of authority to do business or a registered agent for service of process in Texas (nor are they required to do so). *Id.*

- Appellants have never owned or leased real property in Texas or maintained bank accounts in Texas. *Id.*

- Appellants have never owned, leased, or held a security interest or lien on any personal property in Texas. *Id.*

- Appellants have never participated in any kind of legal proceeding in Texas, aside from specially appearing in this case. *Id.*

In short, Appellants have no purposeful contacts with the State of Texas, and it does not comport with due process for a Texas court to exercise personal jurisdiction over them.

## SUMMARY OF THE ARGUMENT

The trial court erred when it denied Appellants' special appearances because Appellants lack sufficient contacts with Texas to justify the exercise of either specific or general jurisdiction. LMS Consulting relies solely on a corporate veil-piercing theory for jurisdiction by which the contacts of the Texas Entities are imputed to Appellants. Texas courts, including the Texas Supreme Court, have repeatedly held that before the corporate form may be disregarded for jurisdictional purposes, the party asserting jurisdiction must prove that the degree of control the parent exercises is *significantly greater* than that normally associated with common ownership and directorship. In other words, LMS Consulting must prove that Appellants exercised "atypical" control over the Texas Entities before the contacts of the Texas Entities are imputed to Appellants for jurisdictional purposes.

9

While Appellants perform certain normal functions for or on behalf of the Texas Entities, they absolutely do not exercise the requisite level of atypical control sufficient to warrant personal jurisdiction in Texas. Texas courts facing instances in which a parent entity exercised far more control over a subsidiary than Appellants do here have refused to pierce the corporate veil for jurisdictional purposes. *See, e.g., Conner v. Conticarriers & Terminals, Inc.*, 944 S.W.2d 405, 419 (Tex. App.—Houston [14th Dist.] 1997, no writ). Appellants are simply *not* within the trial court's jurisdiction, and the trial court erred when it denied Appellants' special appearances.

## ARGUMENT AND AUTHORITIES

### I.      Standard of Review and Applicable Law

The trial court's orders denying Appellants' special appearances are reviewed *de novo*. *BMC Software of Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Texas courts may exercise jurisdiction over a nonresident defendant only if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and federal guarantees of due process. *Id.*; *Petrie v. Widby*, 194 S.W.3d 168, 174 (Tex. App.—Dallas 2006, no pet.). The long-arm statute allows a Texas court to exercise jurisdiction only as far as the United States Constitution permits. *Michiana Easy Livin' Country, Inc. v.*

10

*Holten*, 168 S.W.3d 777, 788 (Tex. 2005). The long-arm statute requires a plaintiff to first satisfy its initial burden to plead allegations sufficient to confer jurisdiction on Texas courts. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex. 2009).

If a plaintiff satisfies its initial burden, courts then examine whether the exercise of jurisdiction comports with state and federal guarantees of due process. The due process clause permits the exercise jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795. It constitutes reversible error to exercise jurisdiction that does not comport with due process.[3] *See Petrie*, 194 S.W.3d at 174. The minimum-contacts analysis requires a defendant to "purposefully avail" itself of the privileges and benefits of conducting business in the forum state before a court may exercise jurisdiction. *Id.*; *Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 440 (Tex. App.—San Antonio 2005, no pet.).

There are two types of personal jurisdiction—specific and general jurisdiction. *Retamco Operating, Inc.,* 278 S.W.3d at 337; *BMC Software*, 83

---

[3] Texas courts, in determining whether jurisdiction exists, may rely on precedent from the United States Supreme Court and other federal courts, as well as decisions from Texas courts of appeal. *BMC Software*, 83 S.W.3d at 795.

S.W.3d at 796–96. ***Specific jurisdiction*** exists when the plaintiff's claim arises from or is related to the nonresident's purposeful contact with Texas. *BMC Software*, 83 S.W.3d at 796. In other words, there must be a "nexus" between the plaintiff's claims and the nonresident's contacts with the forum state. *Equitable Prod. Co. v. Canales-Trevino*, 136 S.W.3d 235, 239 (Tex. App.—San Antonio 2004, pet. denied). ***General jurisdiction***, in contrast, exists when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise jurisdiction even if the plaintiff's claims do not arise from or relate to the nonresident's activities in the forum state. *BMC Software*, 83 S.W.3d at 796. When general jurisdiction is asserted, the minimum-contacts analysis is more demanding and requires the plaintiff to show substantial and continuous activities in the forum state. *S. Stucco, Inc. v. GC Multifamily-New Orleans, L.P.*, 205 S.W.3d 570, 575 (Tex. App.—Dallas 2006, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)).

Finally, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795; *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 915 (Tex. App.—Dallas 2005, no pet.). In making this determination, courts consider the following factors: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and

effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive policies. *Lewis*, 175 S.W.3d at 915.

## II. LMS Consulting Failed to Establish <u>Specific</u> Jurisdiction Over Appellants.

To give rise to specific jurisdiction, the plaintiff's claim must arise from or relate to the nonresident's contacts with Texas. *BMC Software*, 83 S.W.3d at 796. The only basis upon which LMS Consulting asserts jurisdiction over Appellants is through a corporate veil-piercing theory, arguing that the contacts of the Texas Entities may be imputed to Appellants. C.R. 272–73. Texas Supreme Court precedent shows that LMS Consulting has wholly failed to meet its heavy burden under a veil-piercing theory of jurisdiction; thus, Appellants are not subject to the trial court's jurisdiction and must be dismissed.

### A. <u>Appellants do not control the internal operations of the Texas Entities.</u>

LMS Consulting bears a heavy burden to prove its corporate veil-piercing theory of jurisdiction. *BMC Software,* 83 S.W.3d at 798 ("The Party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation."). Texas law presumes that two separate corporations are distinct entities. *Id.* In an effort to overcome this presumption, LMS Consulting claims that Appellants "control the internal business operations

and affairs of Personal-Touch, including Personal Touch Dallas and Personal Touch San Antonio." C.R. 272–73. As evidence, LMS Consulting alleges that Appellants control the following internal operations of the Texas Entities:

> (1) handle all personnel decisions;
>
> (2) managing/making payments to vendors from a New York bank account;
>
> (3) managing payroll and making payroll payments from a New York bank account;
>
> (4) managing and controlling the website used by all of the Personal Touch Home Care companies nationwide, including marketing in Texas by Personal Touch Dallas and Personal Touch San Antonio;
>
> (5) managing and requiring their approval of contracts;
>
> (6) sharing the corporate offices with Personal-Touch;
>
> (7) sharing common directors and officers;
>
> (8) controlling and managing employee benefits to be provided to employees of Personal Touch Dallas and Personal Touch San Antonio; and
>
> (9) overseeing billing for services provided.

*Id.* Allegations (1) and (5) are simply untrue. As Vice President of Operations for the Personal Touch Home Services companies, Dr. Trudy Balk merely supervised manager-level personnel. C.R. 316. This hardly equates to "handling all personnel decisions," as LMS Consulting alleges; rather, Dr. Balk's responsibilities do not extend below administrative-level personnel. *Id.* 323–24.

Moreover, Appellants do not approve agreements entered into by the Texas Entities. *Id.* 324. Although recognizing this fact, LMS Consulting points out that

14

the Texas Entities' contract manager reports to Dr. Balk. *Id.* 315. But LMS Consulting draws false inferences from this fact. LMS Consulting has not (and cannot) show that Appellants approved the contracts at issue entered into by the Texas Entities. *Id.* 324. In fact, Appellants did *not* approve the contracts at issue in this case. *Id.* 29, 324. Finally, while Appellants generally oversee the billing processes, each Texas Entity separately bills for the services it provides. *Id.* 320, 324.

The record is devoid of any evidence indicating (much less establishing) that Appellants control the internal operations of the Texas Entities. LMS Consulting has failed to carry its burden to establish facts sufficient to confer personal jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex. 2009). As such, Appellants must be dismissed.

Finally, LMS Consulting has the proper entities already in the lawsuit. As set forth above, the Texas Entities did not file Rule 120a Special Appearances and are before the trial court for all purposes.

**B.** **Even assuming *arguendo* that Appellants maintain internal control over the Texas Entities, the alleged level of control is insufficient to establish personal jurisdiction.**

Under the doctrine of jurisdictional veil-piercing, a court may exercise jurisdiction over a nonresident parent corporation only when the parent corporation and the subsidiary can be "fused" for jurisdictional purposes. *BMC Software of*

15

*Belg., N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002). To "fuse" the parent corporation and its subsidiary for jurisdictional purposes,

> the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. **But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship**; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*Id.* (emphasis added). The rationale for exercising jurisdiction in such a scenario is that "the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Texas courts are careful, however, to distinguish between parental involvement—control typically exerted by a parent company over a subsidiary—and atypical control. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007). Indeed, when the parent company exercises a normal degree of control over its subsidiary, a court may not impute the subsidiary's contacts with the forum state to the parent company for jurisdictional purposes. *Id.*

In determining the level of control sufficient to "fuse" a parent corporation with its subsidiary, Texas courts consider many factors. *See, e.g., Conner v. Conticarriers & Terminals, Inc.,* 944 S.W.2d 405, 419 (Tex. App.—Houston [14th

16

Dist.] 1997, no writ). But only those factors that collectively demonstrate "atypical" control are sufficient. *See PHC-Minden, L.P.*, 235 S.W.3d at 176. Thus, the fact that a parent and its subsidiary share some or all of the same directors or officers is not evidence of atypical involvement. *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975). Nor is it "atypical" control for a parent corporation to issue paychecks to the subsidiary's employees, provided that the salaries are "intercompany payables; that is, the monies [that] come from the [subsidiary's] revenues." *PHC-Minden, L.P.*, 235 S.W.3d at 176. Similarly, a parent corporation does not exert "atypical" control if it provides group health insurance to a subsidiary's employees, provided that such polices are funded from the subsidiary's revenues. *Id.* Even when a parent and subsidiary share the same legal and accounting services, bank accounts, and common officers, it is not the amount of control required to "make alter ego jurisdiction proper." *Conner*, 944 S.W.2d at 419.

LMS Consulting has not met its burden to prove its corporate veil-piercing theory of jurisdiction. Its allegations do not establish that Appellants maintained "atypical" control over the Texas Entities. *Id.* Instead, the allegations demonstrate a normal relationship between a parent corporation and its subsidiaries. Despite these facts, as set forth above, LMS Consulting alleges Appellants perform the following functions for the Texas Entities:

(1) handling all personnel decisions;

(2) managing/making payments to vendors from a New York bank account;

(3) managing payroll and making payroll payments from a New York bank account;

(4) managing and controlling the website used by all of the Personal Touch Home Care companies nationwide, including marketing in Texas by Personal Touch Dallas and Personal Touch San Antonio;

(5) managing and requiring their approval of contracts;

(6) sharing the corporate officers with Personal-Touch;

(7) sharing common directors and officers;

(8) controlling and managing employee benefits to be provided to employees of Personal Touch Dallas and Personal Touch San Antonio; and

(9) overseeing billing for services provided.

C.R. 272–73.

Assuming *arguendo* the factual accuracy of these allegations (which are untrue for the reasons set forth above), they do not establish an "atypical" degree of control necessary to confer jurisdiction. *PHC-Minden, L.P.,* 235 S.W.3d at 175. LMS Consulting alleges that Appellants manage payroll and make payroll payments from a New York account. C.R. 272–73. This allegation is based on Dr. Balk's testimony that each of the Texas Entities is responsible for their respective payroll obligations, but the payments themselves come from "one pot." *Id.* 319. Courts have held, however, that it is not atypical for a parent corporation to issue

18

paychecks to the subsidiary's employees, provided that the salaries are "intercompany payables; that is, the monies come from the [subsidiary's] revenues." *PHC-Minden, L.P.*, 235 S.W.3d at 176. And in this case, they are. Though the payments come from "one pot," those payments are "attributed to each of the companies." C.R. 319, 324–25. The payments are "intercompany payables" and, therefore, this allegation fails to demonstrate "atypical" control.

LMS Consulting also alleges that Appellants manage and control a website that each of its subsidiaries use for marketing purposes. *Id.* 272–73. Appellants do manage and control a website, but contrary to LMS Consulting's assertions, Appellants do not provide marketing materials for the Texas Entities through the website. *Id.* 65–70. Rather, each of the Texas Entities is responsible for their own marketing. *Id.* 318, 324. Further, as courts have instructed, an informational website like the one maintained by Appellants that presents only passive advertising, is not sufficient to support the exercise of personal jurisdiction over an entity. *Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

LMS Consulting further alleges that Appellants and the Texas Entities share common directors and officers and the same corporate offices. C.R. 272–73. The Texas Supreme Court has refused to pierce the corporate veil on the basis that the parent corporation and subsidiary share "some or all of the [same] directors or

officers." *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975). Further, LMS Consulting's allegation that Appellants (Personal Touch Holding Corp and PT Intermediate Holding, Inc.) share corporate offices is irrelevant, since the subsidiaries at issue are the Texas Entities. The Texas Entities do not share corporate offices with Appellants. C.R. 324.

In addition, LMS Consulting alleges that Appellants control and manage employee benefits for the Texas Entities' employees. *Id.* 272–73. Although Appellant Personal Touch Holding Corp. is responsible for employee health benefits, the Texas Entities pay for the benefits. *Id.* 317, 324. The Texas Supreme Court has expressly held that a group health insurance policy administered by a parent for its subsidiaries is not atypical control, provided that such polices are funded from the subsidiary's revenues. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007). Here, the Texas Entities' group health insurance policy is funded from the Texas Entities' revenues. C.R. 324. Thus, this allegation is not evidence of atypical control.

LMS Consulting next alleges that Appellants oversee billing for the services provided by the Texas Entities, including "managing/making" payments to vendors from a New York bank account. *Id.* 272–73. This allegation is simply untrue. Each of the Texas Entities separately bills for the services it provides. *Id.* 320, 324. As a result, this is not a basis for jurisdiction.

Finally, LMS Consulting alleges that Appellants manage and make payments to the Texas Entities' vendors from a New York bank account. *Id.* 272–73. While courts do consider the payment of corporate debt as evidence of alter ego,[4] such evidence is not dispositive. The key here is Appellants' financial structure. Appellant Personal Touch Holding Corp. collects the revenues generated by each subsidiary. *Id.* 325. The revenues are then attributed to each company. *Id.* Thus, the funds generated by each subsidiary are used to pay the vendors with whom it has a relationship. *Id.* 325. And while Appellant Personal Touch Holding Corp. issues checks to vendors, it uses funds generated by the respective Texas Entities with whom the vendor has a relationship. *Id.* Additionally, the vendor payments in question here are not paid to or from Texas. Indeed, while the payments to LMS Consulting are made for services rendered in Texas, the actual payments are mailed to Washington State. *Id*.

In summary, even assuming the truth of LMS Consulting's allegations (which are contradicted by the facts), those allegations are legally insufficient and fail to demonstrate that Appellants exercised "atypical" control over the Texas Entities. LMS Consulting has failed to overcome the presumption that two separate corporations are distinct entities. *BMC Software of Belg., N.V. v.*

---

[4] *See Guarino v. 11327 Reeder Rd., Inc.*, No. 05-12-01573-CV, 2013 Tex. App. LEXIS 10497, at *11 (Tex. App.—Dallas Aug. 20, 2013, no pet.) (mem. op.) (observing that the type of evidence a court will consider as proof of alter ego includes "payment of alleged corporate debt with personal checks or other commingling of funds….").

21

*Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). Because LMS Consulting's allegations are insufficient to support jurisdictional veil-piercing, Appellants must be dismissed.

**III. LMS Consulting Failed to Establish <u>General</u> Jurisdiction Over Appellants.**

A general jurisdiction inquiry involves a "more demanding minimum contacts analysis." *CSR, Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex. 1996). This general-jurisdiction, minimum-contacts analysis imposes a substantially higher burden on the plaintiff. *PHC-Minden, L.P. v. Kimberly-Clark Corp*., 235 S.W.3d 163, 168 (Tex. 2007) ("A general jurisdiction inquiry . . . involves a more demanding minimum contacts analysis . . . with a substantially higher threshold.") (citing 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5); *see also* 6 MOORE'S FEDERAL PRACTICE § 108.41[3] (stating that general jurisdiction "typically requires the defendant to have an office in the forum state"); *Submersible Sys., Inv. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) ("[T]he continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between the defendant and a forum.").

**A. <u>General jurisdiction requires continues and systematic contacts with the forum state.</u>**

General jurisdiction exists only when a defendant's contacts are continuous and systematic. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

22

Usually, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *PHC-Minden*, 235 S.W.3d at 168 (citing 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5).

In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the U.S. Supreme Court rejected the exercise of general jurisdiction despite the nonresident defendant's extensive contacts with Texas. 466 U.S. 408 (1984). The plaintiff in *Helicopteros* brought a tort claim against the Colombian helicopter operator arising from a helicopter crash in Columbia. *Id.* at 409–10. The Columbian company had negotiated a contract in Houston to provide for the services that led to the crash. *Id.* at 411. The Columbian company had also purchased about 80 percent of its helicopter fleet from a Texas company, sent its pilots to Texas for training, sent members of its management to Texas for technical consultations in connection with the purchase of its fleet, and accepted payment for the services that led to the crash in funds drawn on a Texas bank. *Id.* Despite all of these contacts, the Supreme Court held that they were not "continuous and systematic" so as to confer general jurisdiction over the Columbian company.

The Fifth Circuit's holding in *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, is also instructive. 249 F.3d 413 (5th Cir. 2001). In

*Submersible Systems*, the court found no general jurisdiction despite the fact that the nonresident defendant communicated and contracted with a forum resident to build a marine drilling rig, maintained an office in the forum state during construction of the rig, and kept three employees in the forum state to monitor the construction. *Id.* at 419. In reaching its conclusion, the court emphasized that the nonresident had an out-of-state headquarters, did business almost exclusively out of state in a foreign country, and that its only contacts with the forum state were in relation to the drilling rig contract. *Id.* at 420.

B.  **There is no basis for the exercise of general jurisdiction over Appellants in this case.**

Appellants do not have "continuous and systematic contacts" with Texas. Indeed, Appellants have drastically fewer contacts with Texas than the defendants in both *Helicopteros* and *Submersible Systems*—they have ***none***. Appellants do not operate in Texas. C.R. 82, 296. As noted above, Appellants:

- are corporations formed under the laws of the states of Delaware (Appellant Personal Touch Holding Corp.) and New York (Appellant PT Intermediate Holding, Inc.), with their principal offices in New York, *id.*;

- do not have an office in Texas, *id*. at 82, 94, 296, 323;

- do not have a mailing address in Texas, *id.*;

- do not maintain any bank accounts in Texas, *id.*;

24

- have never owned any real property in Texas, never leased any real property in Texas, and never had a lien on any real property in Texas, *id.*;

- have never participated in any kind of legal proceeding in Texas, other than this case, *id.*;

- have never owned, leased, or held a security interest in personal property located in Texas, *id.*;

- do not have a registered agent for service of process in Texas, *id.*; and

- do not have a certificate of authority to do business in Texas, *id*.

LMS Consulting's assertion of general jurisdiction relies on the same corporate veil-piercing theory as its specific jurisdiction argument: jurisdiction over Appellants depends on imputation of the Texas Entities' contacts to Appellants. *Id.* 272–73. For the same reasons described in Section II(B), *supra*, the evidence is legally insufficient to demonstrate that Appellants exercised "atypical" control over the Texas Entities necessary to impute the Texas Entities' contacts to Appellants.

## C. Appellant Personal Touch Holding Corp.'s Texas Taxpayer Number does not subject it to personal jurisdiction in Texas.

LMS Consulting argues that the exercise of personal jurisdiction is proper over Appellant Personal Touch Holding Corp. because it "maintains with the Texas Comptroller the right to transact business in Texas under Texas Taxpayer

Number 32050538902."[5] C.R. 273. But a Texas Taxpayer Number does not satisfy the minimum contacts analysis, nor is it even relevant to the issue of jurisdiction. In *Grand Aerie Fraternal Order of Eagles v. Haygood*, a foreign corporation applied for, and received, a taxpayer number. 402 S.W.3d 766, 774 (Tex. App.— Eastland 2013, no pet.). The court concluded that the existence of a taxpayer number "is not evidence of a contact between [the foreign corporation] and Texas." *Id*. at 782. The court's analysis is predicated on facts distinguishable from this case, but it demonstrates that a Texas Taxpayer Number does not satisfy the minimum contacts analysis. If it did, the *Grand Aerie* court would have reached a different conclusion.

Even if a taxpayer number did qualify as a "contact" with Texas (which it does not), that is no evidence of "continuous and systematic" contacts sufficient to confer general jurisdiction. For example, a number of Texas cases have considered when a nonresident defendant may be subject to general jurisdiction based on the use of a Texas bank account. These cases show that a nonresident defendant is subject to general jurisdiction only when it engages in a pattern of numerous and repeated transactions involving the Texas bank account. *De Elizondo v. Elizondo*,

---

[5] Appellant Personal Touch Holding Corp. files a consolidated federal income tax return for all of its affiliated companies and, as a result, is required to have a Texas Taxpayer Number. C.R. 325 However, all of Personal Touch Holding Corp.'s affiliated companies maintain separate accounting books and records which account for all expenses and income to the appropriate affiliated company. *Id.*

No. 04-08-00384-CV, 2009 Tex. App. LEXIS 4101 (Tex. App.—San Antonio Jun. 10, 2009, no pet.); *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712, 720 (Tex. App.—San Antonio 1999, pet. denied) (holding that infrequent use of bank account to assist in sporadic purchases insufficient to warrant general jurisdiction).

While these cases are limited to the context of Texas bank accounts, their reasoning applies here. Appellant Personal Touch Holding Corp. is a foreign defendant that maintains a Texas Taxpayer Number, but does not exercise its right to conduct business in Texas. C.R. 82, 94, 296, 323. It has not engaged in "numerous and repeated" transactions involving its Texas Taxpayer Number; in fact, it has never conducted a single transaction in Texas. *Id.* Therefore, Appellant Personal Touch Holding Corp.'s Texas Taxpayer Number is not a sufficient contact with Texas to justify the exercise personal jurisdiction.

## IV. The Exercise of Personal Jurisdiction Over Appellants Would Offend Traditional Notions of Fair Play and Substantial Justice.

The exercise of personal jurisdiction over Appellants would offend traditional notions of fair play and substantial justice. In determining whether the exercise of personal jurisdictions comports with fair play and substantial justice, courts consider: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 341 (Tex. 2009). Appellants, which have their principal places of business in New York and no operations in Texas, would be uniquely burdened by litigating this case in Texas.

Moreover, dismissing this case against Appellants for lack of personal jurisdiction will not impair LMS Consulting's ability to seek resolution of its claims against Appellants in a proper forum. More importantly, the proper parties to this dispute are the Texas Entities which are in the case and before the trial court for all purposes. Because the exercise of jurisdiction over Appellants would offend the traditional notions of fair play and substantial justice, the trial court erred in refusing to dismiss this case against Appellants.

**CONCLUSION AND PRAYER**

For the reasons set forth herein and in their special appearances, Appellants are entitled to dismissal for lack of personal jurisdiction. The record unambiguously reflects that the trial court erred when it denied Appellants' special appearances. Accordingly, Appellants respectfully request this Court to reverse the trial court's denial of Appellants' special appearances, dismiss Appellants from this case, and for all other relief to which they may be entitled.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Monte F. James*

Monte F. James
State Bar No. 10547520
mjames@jw.com
Kimberly A. Gdula
State Bar No. 24052209
kgdula@jw.com

100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

**ATTORNEYS FOR APPELLANTS PERSONAL TOUCH HOLDING CORP. AND PT INTERMEDIATE HOLDING, INC.**

## RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 5,330 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Monte F. James*
Monte F. James

# CERTIFICATE OF SERVICE

This is to certify that on this 12th day of January, 2015, a true and correct copy of the above and foregoing document was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this Court and/or via certified mail, return receipt requested upon:

Alejandro Mora
7000 North MoPac Expressway
Suite 200
Austin, Texas 78731
alejandro@morahealthcarelaw.com


*/s/ Monte F. James*
Monte F. James

# NO. 04-14-00827-CV

_____

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

_____

**PT INTERMEDIATE HOLDING, INC. AND
PERSONAL TOUCH HOLDING CORP.,**
**Appellants,**
**v.**
**LMS CONSULTING LLC,**
**Appellee.**

_____

On Appeal from the 45th Judicial District Court of Bexar County, Texas
(Honorable Peter Sakai, of the 225th Judicial District Court, Presiding)
Trial Court Cause No. 2014-CI-00450

_____

**APPENDIX**

_____

**APPENDIX A**     November 7, 2014 Orders Denying Appellants' Special
Appearances



2014CI00450 -D045

CAUSE NO. 2014-CI-00450

| | | |
|---|---|---|
| LMS CONSULTING LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| PT HOME SERVICES OF DALLAS, INC. | § | |
| d/b/a Personal-Touch Home Care, Inc., PT | § | |
| HOME SERVICES OF SAN ANTONIO, | § | |
| INC. d/b/a Personal-Touch Home Care, | § | 45TH DISTRICT COURT |
| Inc., and PERSONAL-TOUCH HOME | § | |
| CARE OF N.Y., INC. f/k/a PERSONAL- | § | |
| TOUCH HOME CARE, INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING SPECIAL APPEARANCE

After considering Defendant PT Intermediate Holding, Inc.'s Special Appearance, the response thereto, the pleadings, the relevant case law, the competent evidence on file, and the arguments of counsel, this Court DENIES PT Intermediate Holding, Inc.'s Special Appearance.

Signed on this _____ day of _____ NOV - 7 2014 _____, 2014.

_____
HON. PETER SAKAI

APPROVED AS TO FORM:

JACKSON WALKER L.L.P.

By: _____

Monte F. James
State Bar No. 10547520
mjames@jw.com
Kimberly Gdula
State Bar No. 24052209
kgdula@jw.com
100 Congress Avenue, Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 236-2002 – Fax
**ATTORNEY FOR DEFENDANT
PERSONAL-TOUCH HOME CARE OF
N.Y., INC. F/K/A PERSONAL-TOUCH
HOME CARE, INC.**

APPROVED AND ENTRY REQUESTED BY:

LAW OFFICES OF ALEJANDRO MORA, PLLC

By: _____

Alejandro Mora
State Bar No. 24051076
7000 North Mopac Expressway,
Suite 200
Austin, TX 78731
(512) 514-6683
(888) 320-0589 – Fax
**ATTORNEY FOR PLAINTIFF**

11504726v.1



2014CI00450 -D045

CAUSE NO. 2014-CI-00450

| | | |
|---|---|---|
| LMS CONSULTING LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| PT HOME SERVICES OF DALLAS, INC. | § | |
| d/b/a Personal-Touch Home Care, Inc., PT | § | |
| HOME SERVICES OF SAN ANTONIO, | § | |
| INC. d/b/a Personal-Touch Home Care, | § | 45TH DISTRICT COURT |
| Inc., and PERSONAL-TOUCH HOME | § | |
| CARE OF N.Y., INC. f/k/a PERSONAL- | § | |
| TOUCH HOME CARE, INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING SPECIAL APPEARANCE

After considering Defendant Personal Touch Holding Corp.'s Special Appearance, the response thereto, the pleadings, the relevant case law, the competent evidence on file, and the arguments of counsel, this Court DENIES Personal Touch Holding Corp.'s Special Appearance.

Signed on this _____ day of **NOV - 7 2014**, 2014.

HON. PETER SAKAI

APPROVED AS TO FORM:

JACKSON WALKER L.L.P.

By: _____

Monte F. James
State Bar No. 10547520
mjames@jw.com
Kimberly Gdula
State Bar No. 24052209
kgdula@jw.com
100 Congress Avenue, Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 236-2002 – Fax
**ATTORNEY FOR DEFENDANT
PERSONAL-TOUCH HOME CARE OF
N.Y., INC. F/K/A PERSONAL-TOUCH
HOME CARE, INC.**

APPROVED AND ENTRY REQUESTED BY:

LAW OFFICES OF ALEJANDRO MORA, PLLC

By: _____

Alejandro Mora
State Bar No. 24051076
7000 North Mopac Expressway,
Suite 200
Austin, TX 78731
(512) 514-6683
(888) 320-0589 – Fax
**ATTORNEY FOR PLAINTIFF**

11504480v.1